[Cite as *State v. Jalowiec*, 2015-Ohio-5042.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 14CA010548 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| STANLEY E. JALOWIEC | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 95CR046840 |

DECISION AND JOURNAL ENTRY

Dated: December 7, 2015

MOORE, Judge.

{¶1} Appellant, Stanley Jalowiec, appeals an order that denied his motion for a new trial. This Court affirms.

I.

{¶2} In 1996, a jury found Mr. Jalowiec guilty of aggravated murder in connection with the death Ronald Lally, and on the jury's recommendation, the trial court sentenced him to death. This Court affirmed. *State v. Jalowiec*, 9th Dist. Lorain No. 96CA006445, 1998 WL 178554 (Apr. 15, 1998). The Ohio Supreme Court affirmed as well. *State v. Jalowiec*, 91 Ohio St.3d 220 (2001), *cert. denied*, 534 U.S. 964 (2001). While his direct appeal was pending, Mr. Jalowiec petitioned the trial court for postconviction relief, followed by three amended petitions. The trial court treated his third amended petition as a successive petition and dismissed it. This Court affirmed. *State v. Jalowiec*, 9th Dist. Lorain Nos. 01CA007844, 01CA007847, 2002 WL 358637 (Mar. 6, 2002), *appeal not allowed*, 96 Ohio St.3d 1439, 2002-Ohio-3344.

{¶3}    Mr. Jalowiec also petitioned the federal district court for a writ of habeas corpus in 2003.  During the course of discovery, previously undisclosed evidence came to light, and in 2005, Mr. Jalowiec filed an amended petition.  The amended petition alleged, in the twentieth claim for relief, that Mr. Jalowiec "was denied his rights to a fair trial, due process of law, and to be free from cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, when the state withheld favorable and exculpatory * * * materials."  *Jalowiec v. Bradshaw*, N.D.Ohio No. 1:03 CV 0645, 2008 WL 312655, *16 (Jan. 31, 2008).  The district court determined that the allegations in Mr. Jalowiec's twentieth ground for relief were procedurally defaulted because Ohio courts had enforced a state procedural bar with respect to one basis for relief and, with respect to the others, Mr. Jalowiec had failed to present them for adjudication in Ohio courts.  *Id.* at *33.  Nonetheless, the district court considered the merits of the procedurally defaulted claims "in an effort to promote judicial efficiency and preserve judicial resources."  *Id*. at *50.  In so doing, the district court concluded that Mr. Jalowiec's twentieth ground for relief was without merit in its entirety.  *Id*. at *66-73.  Mr. Jalowiec appealed to the U.S. Sixth Circuit Court of Appeals.

{¶4}    On May 28, 2008, Mr. Jalowiec also filed a pro se motion for leave to file a delayed motion for a new trial based on newly discovered evidence.  The trial court granted leave, and Mr. Jalowiec filed that motion on June 4, 2008.  The State responded.  In the meantime, Mr. Jalowiec's appeal moved forward in the Sixth Circuit.  Oral argument was heard on June 9, 2010.  The Sixth Circuit issued its final opinion in the case on November 23, 2011.  In response to Mr. Jalowiec's argument that his failure to exhaust should have been excused by the district court, the Sixth Circuit concluded that the nondisclosure of evidence resulted in good cause for the procedural default, but that the nondisclosure did not result in prejudice such that

Mr. Jalowiec was entitled to a stay while his motion for a new trial was litigated in state court. *Jalowiec v. Bradshaw*, 657 F.3d 293, 305 (6th Cir.2011). In so doing, the Sixth Circuit undertook a de novo review, considering each allegation in the twentieth claim for relief individually and collectively. *Id*. at 305-314. The Sixth Circuit affirmed the district court's denial of the twentieth claim for relief, concluding that he had failed to show that "the undisclosed impeachment evidence is sufficiently 'material' to warrant habeas relief." *Id*. at 314.

{¶5} About one month after the Sixth Circuit issued that decision, Mr. Jalowiec moved the trial court for leave to file an amended motion for a new trial. The trial court granted leave, and Mr. Jalowiec filed an amended motion on June 28, 2012. The trial court conducted a hearing on the motion and considered the matter submitted upon the filing of posthearing briefs. The trial court denied Mr. Jalowiec's motion for a new trial on January 29, 2014, and this appeal followed.

II.

{¶6} Because Mr. Jalowiec's motion for a new trial hinged on the materiality of newly discovered evidence, we begin by setting forth the evidence that resulted in his conviction.

{¶7} On January 19, 1994, the body of an unidentified man was found along a road inside a Cleveland cemetery. Police noted that the previous night had been one of the coldest recorded in Cleveland, yet the victim was found shirtless, his upper garments lying along the road in a snow bank. There were blood stains on the road with tire tracks running through them. According to the coroner, the victim had multiple abrasions to his face and split lips from blows to the mouth. He had received multiple blows to the head, and his neck bore scrapes that were "deep" and "impressive." Another "broad area of parallel scrapes" were evident on his chest and abdomen. The coroner ruled that the man died as a result of three factors: a gunshot wound to

the head, which would not have been fatal on its own; multiple blows to the head; and exposure to extremely cold temperatures. About three weeks later, the deceased was identified as Ron Lally.

{¶8} In 1993, Mr. Lally had agreed to purchase drugs from Danny Smith as a confidential informant for the Elyria Police Department. As a result of the purchase, Danny Smith and his father Raymond were charged with drug offenses. Danny was scheduled to go to trial on January 19, 1994. Officer John Homoki testified that in September 1993, he responded to a disturbance call initiated by Mr. Lally, who complained that "these guys" had threatened him. Officer Homoki recalled that Danny Smith said at the time, "That snitch will get his." Officer Homoki also saw Mr. Jalowiec walking away from the disturbance as he arrived on scene. Mr. Lally's fiancé, Sandra Williams, also recalled that Mr. Lally had been threatened by Danny Smith.

{¶9} Witness Lynne Altpater testified that around the same time, Danny Smith asked her whether she could get him some poison because "he said he needed [it] to take care of somebody" who was going to testify against him. Terry Hopkins, a school acquaintance of Danny Smith, testified that he agreed to help Smith "[b]eat somebody up," but that when Smith later approached him because he "wanted somebody killed," he declined. Instead, he arranged for Smith to meet Carl Hartman. Hartman also testified, and he recalled that in the fall of 1993, Danny Smith asked him if he would take money in exchange for making sure that Mr. Lally did not testify. Hartman refused, but recalled that Smith said that "he had somebody that could do it for him[.]" He remembered that Smith mentioned someone named "Stan," but did not use a last name.

{¶10} The night before Danny and Raymond Smith were scheduled to go to trial on the drug charges, they went drinking with some of their acquaintances. Terry Hopkins testified that he was drinking with Danny Smith and Danny's girlfriend Tammy, his own girlfriend, and his sister, Sharon Hopkins. According to his testimony, the group went to a diner when the bars closed for the night, and he returned to his sister's apartment not long after that without Danny Smith.

{¶11} Sharon Hopkins also testified, but she recalled that she stayed behind at the diner when her brother left with his girlfriend. Sharon testified that Raymond Smith, Danny Smith, and Danny's brother Michael were all present. She also recalled that Mr. Jalowiec was present "[h]ere and there" during the evening with Danny, but that by the time the bars closed, Mr. Jalowiec was gone. She stated that she left with Danny Smith, who was her ride home. Raymond and Michael were also in the car, but according to her testimony, Danny dropped them off on Middle Avenue. Danny then pulled into a parking lot in the woods and waited until a convertible drove past. Sharon recalled that the convertible drove back and forth a few times before Danny followed it out of town and signaled for it to pull over. According to Sharon, Danny "ducked down" in the car and told her to get out and ask the driver if they had picked up his brother Michael. Sharon complied. She identified the driver as Mr. Jalowiec and recalled that there were other people in the car that she could not identify. Sharon got back in the car, and Danny Smith drove her home.

{¶12} Joann Fike (also known by the name "Corinne Fike") testified that she knew Danny and Raymond Smith as a result of their involvement with drugs. Fike owned a 1992 Chrysler LeBaron convertible, which she had loaned to Danny on occasion in exchange for drugs that he provided. Fike also owned a dog, whose hair was collected for analysis by the Elyria

police department in connection with Mr. Lally's murder. Fike's nephew, Brian Howington, testified that he used Fike's convertible on the night in question. Howington recalled that he was drinking with Mr. Jalowiec that evening before the two picked Mr. Lally up and went back to Fike's house. Howington testified that Mr. Jalowiec received a page, then asked to borrow Fike's convertible and left with Mr. Lally around 1:00. He returned the car around 5:00 a.m. with Raymond Smith, and the car was "frozen, covered with ice" as though it had been washed.

{¶13} Michael Smith, who is the son of Raymond Smith and brother of Danny Smith, implicated his father and Mr. Jalowiec directly in the murder of Mr. Lally and, indirectly, implicated Danny in the scheme that led up to Mr. Lally's death. Michael testified that he was out on the night of January 18, 1994, and met up with his father and brother at a diner. He left the diner with Raymond, Danny, and Danny's girlfriend, Tammy, in Danny's car. Michael recalled that Danny dropped him and Raymond off, and they waited until Mr. Jalowiec picked them up in a Chrysler LeBaron. Mr. Lally was a passenger in the car as well. Michael recalled that as they drove, Raymond threatened Mr. Lally because he had set Danny up, but said that "We are going to give you some money, get you a bus ticket, you are going to get out of town." Michael testified that instead, Raymond gave Mr. Jalowiec instructions to drive into Woodland Cemetery, where he and Mr. Lally got out of the car. According to Michael, Raymond pointed a gun at Mr. Lally's face and said, "You will never snitch on nobody again[.]" Michael heard a gunshot and heard Mr. Lally exclaim, "You shot me in my head, you shot me in my head" before pleading for his life.

{¶14} At that point, Michael recalled that Raymond told Mr. Jalowiec to get out of the car and a scuffle ensued. Michael testified that at one point, Mr. Jalowiec opened the door and retrieved a knife. Silence followed, then according to Michael, he heard the trunk open and

heard Mr. Jalowiec say, "He ain't going to fit, he ain't going to fit, he is too stiff[.]" Michael recalled that Raymond and Mr. Jalowiec got back into the car and that Mr. Jalowiec backed the car into something three times. Mr. Lally did not get back into the car. As the men drove away, Michael recalled that Raymond asked why he had not gotten out of the car to help, then dismantled his gun and threw it from the window piece by piece.

{¶15} Terry Hopkins testified that after his sister Sharon got home early on the morning of January 19th, he returned to Danny Smith's apartment, where he had been staying. According to Hopkins' recollection, Danny was "nervous, real nervous and said he was feeling sick to his stomach. * * * He said they had done it, they did it." Hopkins left, then returned the next day to get his belongings. He recalled that Danny Smith, Raymond Smith, Michael Smith, and Mr. Jalowiec were all at the apartment talking "[a]bout what they had done to this guy." Hopkins testified that he heard Mr. Jalowiec say that "[t]hey stomped him and ran him over with a car," and the group talked about shooting and cutting the victim. He recalled that Danny Smith wanted the victim killed because he had worn a wire during a drug deal. According to Hopkins, Michael Smith seemed nervous during the conversation.

{¶16} During the course of their investigation, police examined the Chrysler LeBaron owned by Joann Fike for evidence. They found human blood on the trunk liner with a DNA profile that was consistent with Ron Lally, but inconsistent with Raymond Smith, Danny Smith, and Mr. Jalowiec. Police also found dog hairs in the trunk that matched hairs found on Mr. Lally's clothing after his death.

{¶17} Detective Alan Leiby, who led the investigation into Mr. Lally's death, also testified at trial. During his testimony, Detective Leiby acknowledged that every witness in the State's case had refused to cooperate at the beginning of his investigation. He also testified that

in exchange for cooperating in the investigation, witnesses Carl Hartman and Terry Hartman received favorable consideration in criminal cases that were pending against them. He acknowledged that he told Brian Howington, a drug user at the time, that he would not be charged with a drug offense as a result of anything he said during his interview. Detective Leiby testified that the fact police did not charge Michael Smith with a crime, however, was unrelated to his cooperation.

{¶18} Mr. Jalowiec's attorneys mounted a vigorous defense at trial, honing in on three specific aspects of the State's case: numerous prior inconsistent statements by witnesses, the favorable treatment provided to some witnesses in the context of their own criminal cases, and the fact that many witnesses were under the influence of drugs and alcohol on the night of the murder.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING JALOWIEC A NEW TRIAL AFTER A PARTIAL EVIDENTIARY HEARING[.]

{¶19} Mr. Jalowiec's first assignment of error argues that the trial court erred by failing to conduct a full hearing on his motion for a new trial and by issuing a decision that did not explain the basis for denying his motion in detail. We disagree.

{¶20} Crim.R. 33(A)(6) provides that a new trial may be granted "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." By its terms, Crim.R. 33 does not require a hearing on a motion for a new trial, and this Court has consistently held that the decision to conduct a hearing is one that is entrusted to the discretion of the trial court. *State v. Smith*, 30 Ohio App.3d 138, 139 (9th Dist.1986). When this Court reviews a decision for an abuse of discretion, we consider whether the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v.*

*Penix*, 9th Dist. Summit No. 23699, 2008-Ohio-1051, ¶ 34, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶21} In this case, the trial court conducted a hearing, but Mr. Jalowiec objects to the scope of the hearing that the trial court conducted. Specifically, the trial court held its proceedings in two stages. In the first, the court heard arguments from counsel about the evidence that Mr. Jalowiec identified in his motion for a new trial, focusing specifically on determining which items of evidence had been previously considered during the federal habeas proceedings. In the second stage, the trial court heard evidence from the witnesses that had been so identified. After the hearing, the trial court permitted the parties to file closing briefs on the merits of the case. Given the procedural posture of this case and the fact that Mr. Jalowiec's motion for a new trial acknowledged that much of the newly discovered evidence upon which he relied had been previously analyzed by the federal courts in connection with his habeas petition, we cannot conclude that the trial court abused its discretion by structuring the hearings in this way.

{¶22} Mr. Jalowiec has also argued that the trial court's written decision that denied his motion for a new trial is insufficient because it did not explain its ruling in adequate detail. It is well-settled, however, that a trial court is under no duty to issue a written decision that contains findings of fact and conclusions of law when it rules on a motion under Crim.R. 33. *State ex rel. Collins v. Pokorny*, 86 Ohio St.3d 70 (1999).

{¶23} The trial court did not abuse its discretion in its conduct of the hearing in this matter, nor was it obligated to include findings of fact and conclusions of law in its order denying Mr. Jalowiec's motion for a new trial. Mr. Jalowiec's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN DENYING JALOWIEC A NEW TRIAL WHERE HE PRESENTED SUBSTANTIAL NEW EVIDENCE DEMONSTRATING THAT POLICE AND PROSECUTORS VIOLATED HIS RIGHTS UNDER BRADY V. MARYLAND.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED IN DENYING JALOWIEC A NEW TRIAL WHERE HE PRESENTED MATERIAL NEW EVIDENCE OF HIS INNOCENCE THAT WOULD CHANGE THE RESULT ON RETRIAL[.]

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT VIOLATED JALOWIEC'S EIGHTH AND FOURT[E]ENTH AMENDMENT RIGHTS BECAUSE HE FACES A SENTENCE OF DEATH FOR A CRIME OF WHICH HE IS ACTUALLY INNOCENT.

**{¶24}** Mr. Jalowiec's second, third, and fourth assignments of error argue that the trial court erred by denying his motion for a new trial by concluding that many of his arguments were barred by res judicata and by concluding that he had not established prejudice sufficient to warrant granting a new trial. With respect to the latter argument, Mr. Jalowiec alleges that some evidence is newly discovered because it was not disclosed by the State before trial. With respect to all of the evidence, whether allegedly undisclosed or otherwise newly discovered, Mr. Jalowiec argues that it demonstrates that he is actually innocent.

**{¶25}** A threshold issue concerns the trial court's application of res judicata to evidence previously considered by the federal courts in connection with Mr. Jalowiec's petition for habeas corpus. Mr. Jalowiec has argued that the trial court erred in doing so because "[t]he evidence considered in federal court was strikingly different from what Jalowiec was [*sic*] presented in his [motion for a new trial]." We disagree.

**{¶26}** Mr. Jalowiec's motion for a new trial concedes that some evidence upon which he relies was previously considered by the federal courts. Among this material, Mr. Jalowiec

pointed to evidence that, according to him, implicates Danny Smith in the murder and evidence that demonstrates that the State exerted improper influence over witnesses. With respect to Danny Smith's involvement, Mr. Jalowiec points to a witness statement by a woman named Melissa Arroyo in 1995, in which she told police that Danny Smith admitted participating in a murder; a letter written by a Robert Quillen, who claimed that Danny Smith admitted that he killed "the snitch"; Danny Smith's own opinion, expressed to police officers, that he did not think Mr. Jalowiec was capable of murder; a letter from Raymond Smith to Danny Smith from the year 2000 (after Raymond was convicted and Danny was acquitted) that urged Danny to tell the truth about his involvement; and an allegation that an informant placed in Mr. Jalowiec's prison cell with a recorder failed to come away with any inculpatory statements.

{¶27} According to Mr. Jalowiec, other evidence implies that witnesses were influenced to testify against Mr. Jalowiec because they received favorable treatment in their own criminal cases. This included Lynne Altpater, who claimed that her husband received favorable treatment in a drug case; Terry Hopkins, who received shock probation; Brian Howington, who was granted immunity in connection with his testimony and who, according to Mr. Jalowiec, was influenced by his aunt with respect to the content of his testimony; Joann Fike, whose testimony Mr. Jalowiec surmises, despite the lack of supporting evidence, to have been the result of improper influence by Detective Leiby; and Michael Smith, whose testimony Mr. Jalowiec guesses may have been the result of favorable treatment.

{¶28} In the course of determining whether Mr. Jalowiec's procedural default should be excused and whether federal appellate proceedings should be stayed, the federal courts considered all of this evidence and concluded that the *Brady* standard had not been met.

*Jalowiec*, 2008 WL 312655, at *66-73; *Jalowiec*, 657 F.3d at 302-314. More specifically, the Sixth Circuit Court of Appeals concluded:

> In reaching this conclusion, we hold that Jalowiec has not shown such prejudice as to render the unexhausted part of his *Brady* claim sufficiently meritorious to warrant a stay pending completion of his state court exhaustion efforts. Further, on de novo review of the merits of the claim, we hold that Jalowiec has not shown that the undisclosed impeachment evidence is sufficiently "material" to warrant habeas relief.

*Id*. at 313-314.

{¶29} Res judicata encompasses both claim preclusion and issue preclusion. *State ex rel. Nickoli v. Erie MetroParks*, 124 Ohio St.3d 449, 2010-Ohio-606, ¶ 21. With respect to issue preclusion, application of res judicata "serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties[.]" *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, ¶ 7, citing *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998). Two issues are the same for purposes of issue preclusion when the same evidence will sustain both. *Ft. Frye* at 396, citing *Norwood v. McDonald*, 142 Ohio St. 299 (1943), paragraph four of the syllabus.

{¶30} Mr. Jalowiec moved for a new trial under Crim.R. 33(A)(6), which requires a defendant to demonstrate that new evidence:

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Petro*, 148 Ohio St. 505 (1947), syllabus. Crim.R. 33 does not contemplate a motion for a new trial on grounds of evidence demonstrating "actual innocence" apart from the grounds set

forth in Crim.R. 33(A)(6), so a motion based on the premise must demonstrate the strong probability that newly discovered evidence would have led to a verdict of not guilty.

{¶31} A defendant who argues that exculpatory evidence was wrongfully withheld by the State in violation of the Due Process Clause, on the other hand, must demonstrate the suppression of favorable evidence that is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). Undisclosed evidence is "material" when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682 (1976).

{¶32} When a due process violation is alleged in within the framework of Crim.R. 33(A)(6), the defendant maintains that evidence is "newly discovered" by virtue of it having been suppressed before trial. Because the standard for materiality under *Brady* and its progeny is lower than that required by Crim.R. 33(A)(6) and *Petro*, that analysis is dispositive. *See State v. Baker*, 12th Dist. Clinton No. CA2000-08-018, 2001 WL 1218888, *6 (Oct. 15, 2001).

{¶33} Thus, the critical issue in both the federal habeas proceedings and the proceedings related to Mr. Jalowiec's motion for a new trial is whether the new evidence at issue would have changed the result of Mr. Jalowiec's trial. With respect to the evidence presented during the habeas proceedings, the federal courts considered the issue of materiality under *Brady* and concluded that the evidence would not have changed the outcome. As noted above, this threshold of materiality is lower than that required by Crim.R. 33(A)(6). Consequently, it

presents the same issue for purposes of issue preclusion, and res judicata prohibits Mr. Jalowiec from arguing the motion based on the same evidence in this case.

{¶34} Nonetheless, Mr. Jalowiec also argues that his motion is based on evidence that was discovered *since* the federal habeas proceedings and that based on that evidence, alone and in conjunction with the previously discovered evidence, he is entitled to a new trial. We disagree.

{¶35} Some of this allegedly newly discovered evidence is essentially a restatement of the evidence that the federal courts considered and rejected. The affidavit of Jeff Buteau reiterated the suppositions from his earlier affidavit that Joann Fike, received assistance from Detective Leiby and coached Brian Howington regarding his statement to police. Danny Smith's affidavit repeated his speculation that Mr. Jalowiec would not have killed someone and the allegation that his brother, Michael Smith, was given immunity and financial assistance from the State in exchange for cooperating with the prosecution. The affidavits of Ditanvia Deiger and Gerald Mielcarek, who had no connection to the events at issue, reiterated the same allegations. Like Danny Smith, Richard Altpater speculated that Mr. Jalowiec could not kill someone. A new affidavit from Melissa Arroyo, whose statement to police was considered during the habeas proceedings, appears at first glance to offer new evidence, but upon closer examination of the record, it fails to do so. When Ms. Arroyo testified at the hearing on Mr. Jalowiec's motion for a new trial, she admitted that she did not read her affidavit before signing it and recanted much of it. The testimony that she provided contradicted her affidavit and was consistent with the statement already considered by the federal courts.

**{¶36}** All of this evidence is redundant and bears on the same issues resolved by the federal courts. As such, res judicata applies in this proceeding, and the trial court did not err in reaching this conclusion.

**{¶37}** With respect to the rest of the evidence that Mr. Jalowiec has advanced in support of his motion for a new trial – and to all of the evidence collectively – we also conclude that the trial court did not err in denying the motion. "The decision whether to grant a new trial on grounds of newly discovered evidence falls within the sound discretion of the trial court." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶85, citing *State v. Hawkins*, 66 Ohio St.3d 339, 350 (1993). When a *Brady* violation is framed in terms of Crim.R. 33(A)(6), an appellate court still reviews the determination for an abuse of discretion. *See generally LeMar* at ¶ 85.

**{¶38}** Crim.R. 33(A)(6) permits a new trial to be ordered when "new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." In order to establish that new evidence warrants a new trial under Crim.R. 33(A)(6), a movant must establish that the new evidence:

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*Petro*, 148 Ohio St. 505 at syllabus. Evidence that impeaches or contradicts the evidence at trial is not excluded from consideration per se, but the character of that evidence is relevant to whether a different result is a strong probability. *State v. Cureton*, 9th Dist. Medina Nos. 03CA0009-M, 03CA0010-M, 2003-Ohio-6010, ¶ 19, quoting *Dayton v. Martin*, 43 Ohio App.3d 87 (2d. Dist.1987), syllabus. The nature of the evidence is a significant consideration:

> In singling out impeaching or contradicting evidence, *Petro* recognized that the nature of such evidence requires that a trial court exercise circumspection in

determining whether newly discovered evidence of that character would create a strong probability of a different result, because such evidence quite often will not be likely to change the outcome.

*Martin* at 90.

{¶39} In this case, the trial court did not abuse its discretion by denying Mr. Jalowiec's motion for a new trial because some of the remaining evidence is not "newly discovered" and the rest does not demonstrate a strong probability of a different result at trial. This remaining evidence can be grouped into four categories: evidence that attempts to impeach the credibility of trial witnesses, expert testimony that attempts to cast doubt on the State's case, general criticism of the Elyria Police Department, and evidence that purports to bear on Mr. Jalowiec's innocence.

{¶40} Exhibits 57-60 contain affidavits of Mr. Jalowiec's immediate family members that date to 1998. These affidavits claim that family members were with Mr. Jalowiec on the night of Ron Lally's murder. Exhibit 1 is the affidavit of Mr. Jalowiec himself, in which he claims that he was a confidential informant for the Elyria Police Department at the time of the murder. Mr. Jalowiec could have discovered this evidence with reasonable diligence and, accordingly, it cannot support a motion for a new trial.

{¶41} The affidavits of Tammy Lasinis, fka Tammy Castro, Danny Smith, and Richard Altpater attempt to impeach the credibility of trial witnesses. Ms. Lasinis was Danny Smith's girlfriend at the time of the murder. In her affidavit, she maintains that she was working the night that Mr. Lally died; that Danny Smith borrowed Joann Fike's car in exchange for drugs; and that she has no idea who killed Ron Lally. To the extent that Ms. Lasinis claims that she was working the night of the murder, her affidavit contradicts the trial testimony of Terry Hopkins and Sharon Hopkins, both of whom claimed that she was among the group that went drinking that evening. Mr. Jalowiec's motion for a new trial articulates the significance of her affidavit as

follows: "If these witnesses were wrong about [her] being in Elyria that night, they can be no less wrong about seeing Jalowiec in the LeBaron." This is purely speculative. Ms. Lasinis, Danny Smith, and Richard Altpater each maintain that on occasion, Danny exchanged drugs with Joann Fike in exchange for the use of her car. Ms. Fike herself testified to this fact at trial, however, and it falls far short of establishing that anyone other than Mr. Jalowiec borrowed the car on the night of the murder.

{¶42} Like the statement of Robert Quillen that was considered by the federal courts during the habeas proceedings, the affidavit of inmate Wilbur Jeffrey Lewis maintains that while Mr. Lewis was incarcerated with Raymond and Danny Smith, they confessed to the murder of Ron Lally, but never implicated Mr. Jalowiec, who maintained his innocence. That Mr. Jalowiec maintains his innocence is unsurprising, and that Danny and Raymond implicated themselves is equally so. The State's theory of the case, after all, was that Danny planned the murder while Raymond and Mr. Jalowiec carried it out. In other words, Mr. Quillen's statements are not material to Mr. Jalowiec's defense.

{¶43} The final items at issue are three affidavits from people with no connection to the case. The first is the affidavit of Hetzel See, a former Elyria police officer. Mr. See's affidavit makes sweeping allegations against the police and the then-prosecutor, but he acknowledged at the hearing that he had no involvement in the investigation of Mr. Lally's murder. At best, Mr. See's affidavit is speculative. It has virtually no evidentiary value in the context of Crim.R. 33(A)(6).

{¶44} The second and third exhibits contain reports authored by experts retained by Mr. Jalowiec's defense. Gary A. Rini, whose report is Exhibit 3 in support of Mr. Jalowiec's motion for a new trial, opined that it would be difficult for four adult males to ride in Joann Fike's 1994

Chrysler LeBaron; that Mr. Lally died at the scene where the body was later found; and that there was no forensic evidence of "crushing wounds" caused by a vehicle running over Mr. Lally's body. In an affidavit marked as Exhibit 53, Dr. Leroy Riddick opined that Mr. Lally was beaten before being shot, that he could not have said, "You shot me in the head" after being shot, and that the coroner miscalculated the time of Mr. Lally's death. Dr. Riddick agreed that Mr. Lally had been beaten and that his injuries were consistent with being struck by an automobile. These exhibits are offered in an attempt to contradict the testimony of trial witnesses Michael Smith, who testified about the events that he heard from the LeBaron on the night of the murder, and Dr. Heather Neilson Raaf, who performed the autopsy of Mr. Lally's body. The inconsistencies raised by these experts, however, were apparent from the trial court proceedings and were the subject of cross-examination by Mr. Jalowiec's attorneys at trial.

{¶45} The new evidence to which Mr. Jalowiec points consists of speculation and alleged contradictions that do not create a strong possibility of a different outcome at trial. This is the case when the evidence is considered individually and collectively and, indeed, when it is considered in the context even of the evidence to which res judicata applies in these proceedings. Counsels' zeal for their client is admirable. But the evidence in the record does not "destroy[]" the testimony of the State's key witnesses or "make[] clear that on retrial, no reasonable juror would conclude that Jalowiec had any role in Lally's death." To the contrary, the evidence is consistent with the State's theory of the case: Danny Smith conspired with Raymond Smith to murder Mr. Lally, but left the murder itself to Raymond and Mr. Jalowiec.

{¶46} The trial court did not abuse its discretion in denying Mr. Jalowiec's motion for a new trial. His second, third, and fourth assignments of error are overruled.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED IN DENYING JALOWIEC A NEW TRIAL WHERE HE PRESENTED SUBSTANTIAL NEW EVIDENCE THAT THE STATE VIOLATED HIS CONSTITUTIONAL RIGHTS UNDER ARIZONA V. YOUNGBLOOD[.]

**{¶47}** Mr. Jalowiec's fifth assignment of error is that the State violated his right to due process by destroying exculpatory evidence. Specifically, Mr. Jalowiec maintains that there is "substantial new evidence" that Detective Leiby destroyed tape recordings of interviews in bad faith. We disagree.

**{¶48}** Crim.R. 33(A)(2) provides that a new trial may be granted because of misconduct by the prosecutor or a witness for the state that materially affects a defendant's substantial rights. This inquiry consists of two steps. *State v. Heru*, 9th Dist. Summit No. 24756, 2010-Ohio-635, ¶2, quoting *State v. Herb*, 167 Ohio App.3d 333, 2006-Ohio-2412, ¶ 6 (9th Dist.). The first determination is whether misconduct actually occurred, and the second is whether that misconduct materially prejudiced the defendant's substantial rights. *Heru* at ¶2, quoting *Herb* at ¶ 6. With respect to the existence of misconduct, the United States Supreme Court has recognized that whether or not a defendant makes a specific request for disclosure, the suppression of *exculpatory* evidence that is material to guilt or punishment violates due process without respect to whether the state acted in bad faith. *Brady*, 373 U.S. at 87. When the state fails to preserve evidence that is merely "potentially useful," a defendant must demonstrate that the state acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

**{¶49}** As a threshold matter, however, a defendant cannot establish a due process violation by speculating about the existence, content, and disposition of evidence. *See United States v. Jobson*, 102 F.3d 214, 218-219 (6th Cir.1996); *Gipson v. Sheldon*, N.D.Ohio No. 3:13-CV-1997, 2015 WL 1980244, *9; *United States v. Lusenhop*, S.D.Ohio No. 1:14-CR-122, 2015 WL 1487126, *5 (Apr. 1, 2015); *Phelps v. Richard*, S.D.Ohio No. 1:12-CV-896, 2014 WL

1872115, *10-11 (May 8, 2014). *Compare United States v. Williams-Davis*, 90 F.3d 490, 514 (D.C.Cir.1996) (refusing to infer the existence of *Brady* material based on speculation). This is precisely what Mr. Jalowiec has attempted to do. Mr. Jalowiec speculates that because some witness interviews were tape recorded, all were tape recorded; infers that if all were recorded, some must have been destroyed; and surmises that if some were destroyed, they must have been potentially useful. This speculation does not establish misconduct on the part of the State or its witnesses, and it is therefore not sufficient to entitle Mr. Jalowiec to a new trial under Crim.R. 33(A)(2).

{¶50} Mr. Jalowiec's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED IN DENYING A NEW TRIAL WHERE [JALOWIEC] HAS PRESENTED THE COURT WITH SUBSTANTIAL NEW EVIDENCE OF INEFFECTIVE ASSISTANCE OF COUNSEL UNDER STRICKLAND AND MARTINEZ[.]

{¶51} Mr. Jalowiec's final assignment of error raises two ineffective assistance arguments. The first is that if this Court determines his claims have no merit because trial counsel could have discovered the evidence at issue, trial counsel was ineffective. This Court has determined that his motion for a new trial was properly denied for reasons other than the performance of trial counsel, so this aspect of Mr. Jalowiec's sixth assignment of error is moot. Mr. Jalowiec's second argument is that he should be granted a new trial because he received ineffective assistance during the habeas proceedings. This argument fails for two fundamental reasons. The Sixth Amendment right to counsel extends only as far as direct appeals as of right in state courts. *See generally Halbert v. Michigan*, 545 U.S. 605 (2005). The standards for effective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) are grounded in the guarantees of the Sixth Amendment. *Id*. at 684-686. These standards do not

apply to Mr. Jalowiec's federal habeas proceedings. Even if they did, however, a direct appeal from a state court's denial of a motion for a new trial would not be the proper judicial forum to consider these arguments.

**{¶52}** Mr. Jalowiec's sixth assignment of error is overruled.

### III.

**{¶53}** Mr. Jalowiec's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

MICHELE L. BERRY and TARA THOMPSON, Attorneys at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.