[Cite as *State v. Alford*, 2020-Ohio-1099.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

JERRY D. ALFORD, JR.

    Appellant

C.A. No.     29411

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 18 02 0431(A)

DECISION AND JOURNAL ENTRY

Dated: March 25, 2020

TEODOSIO, Judge.

{¶1} Appellant, Jerry D. Alford Jr., appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} The 57-year-old victim ("D.A.") was shot and killed near the Baho Convenience Store ("the Baho") in Akron on November 16, 2017. Surveillance video from the Baho that evening shows D.A. arriving at the store in a black car, entering the store, making a purchase, and then leaving the store. Two males can be seen entering the store approximately one minute later and loitering near the door. When D.A. exits the store, one of the men looks out the door toward him, and then both men follow out after him as he heads down nearby Oakdale Avenue toward his home. D.A. was shot and killed on Oakdale shortly thereafter, although no one witnessed the actual murder and no surveillance footage of the shooting exists.

{¶3} According to Detective Richard Doney of the Akron Police Department, several people came forward in the following days with information regarding the crime. T.T. contacted the police to inform them that he was friends with D.A. and he had seen a man he knew as "Rollie" hiding outside of D.A.'s apartment days before the murder. T.T. spoke to Rollie, and Rollie said he was going to shoot the man who lives there. Knowing that D.A. lived there, T.T. was able to convince Rollie to simply walk away instead. When shown a still photograph of Mr. Alford taken from the Baho surveillance footage, T.T. identified him as the man he knew as Rollie. Next, D.A.'s cousin ("W.A.") told police that he ran into D.A. at a local pharmacy on the day of the murder. W.A. agreed to give D.A. a ride home and, during that ride, D.A. asked W.A. if he had a gun he could borrow because he encountered a man standing outside of his apartment that morning who threatened to shoot him. D.A. asked to be dropped off at the Baho near his home, and when the men pulled into the Baho parking lot D.A. pointed to a man standing outside of the store wearing a gray hat and said, "There's the guy right there who threatened to shoot me." When shown still photographs of two men taken from surveillance footage, W.A. identified Mr. Alford in one of the photos as the man D.A. said had threatened to shoot him that morning. Finally, the victim's neighbor ("T.W.") told police that she was familiar with a man named "Rollie" and had heard that Rollie was the one who shot D.A. When shown the still photograph of Mr. Alford from the surveillance footage, she identified him as the man she knew as Rollie.

{¶4} Other evidence connected Mr. Alford to the murder as well, including saliva or spit found at the crime scene matching Mr. Alford's DNA and a cell phone found in front of D.A.'s Oakdale apartment containing Mr. Alford's DNA and account information. When police interviewed Mr. Alford, he admitted to being in and out of the Baho several times that night while looking for his cell phone. When police interviewed the other man seen with Mr. Alford in the

video ("D.M."), he admitted that he was at the Baho with "Rollie" that night. Mr. Alford was arrested and charged with aggravated murder and other offenses, while D.M. was charged with crimes related to the murder.

{¶5} Mr. Alford filed a motion to suppress, which the trial court denied after a hearing. Prior to trial, one count of aggravated robbery with a firearm specification was dismissed. After a jury trial, Mr. Alford was found guilty of an amended count of murder with a firearm specification and one count of having weapons while under disability. The jury found him not guilty of one count of aggravated murder with a firearm specification. The trial court sentenced Mr. Alford to life in prison with parole eligibility after 15 years for the crime of murder, 3 years mandatory prison for the attendant firearm specification, and 3 years prison for having weapons while under disability, all to be served consecutively to each other. Mr. Alford filed a timely motion for a new trial, which the trial court denied.

{¶6} Mr. Alford now appeals from his convictions and raises two assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS

{¶7} In his first assignment of error, Mr. Alford argues that the trial court erred in denying his motion to suppress. We disagree.

{¶8} The Supreme Court of Ohio has stated:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.

Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶9} Mr. Alford filed a motion to suppress the witness identifications of him, which were secured through the use of still photographs taken from the Baho surveillance video footage. He argued that the pretrial identification process and procedure used by police were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification in violation of his due process rights. At the suppression hearing, he argued that the police should have used a standard photo array, as the process actually employed by police was unduly suggestive.

{¶10} The trial court held a suppression hearing and later denied Mr. Alford's motion. In a journal entry filed on February 26, 2019, the court stated the motion to suppress was denied based on the findings of fact and conclusions of law it stated on the record at the February 25, 2019, final pretrial. At that pretrial hearing, the court made the following findings of fact. T.T. identified Mr. Alford to Detective Doney by his nickname, "Rollie." He told the detective he was friends with Rollie, he heard Rollie make some threats in the days prior to the victim's death, and he saw Rollie hiding in the bushes outside of the victim's home. T.T. also claimed he tried to persuade Rollie not to shoot the victim. W.A. told Detective Doney that D.A. pointed at Mr. Alford outside of the Baho and identified him as the person who had threatened to kill him. T.W. told Detective Doney that she saw Mr. Alford outside of D.A.'s home on a regular basis prior to the killing. The court found that all three witnesses were familiar with Mr. Alford prior to confirming his identity in the photograph from the surveillance video. All three had the opportunity to visually see Mr. Alford and had distinct memories of him prior to any identification of him. In considering the totality of the circumstances, the trial court concluded that the

identifications were reliable, as the witnesses identified Mr. Alford to police merely days after the crime in a manner which was not impermissibly suggestive and did not give rise to any irreparable misidentification.

{¶11} After a complete review of the suppression hearing transcript, this Court accepts the trial court's findings of fact as supported by competent, credible evidence. Accepting those findings as true, we must now independently determine, without deference to the conclusion of the trial court, whether those facts satisfy the applicable legal standard. *See Burnside* at ¶ 8.

{¶12} "A photographic identification procedure is violative of due process of law only if it was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *State v. Putnam*, 9th Dist. Summit No. 20629, 2002 WL 274459, *2 (Feb. 27, 2002), quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968). "The rationale for excluding a tainted pretrial identification is to protect the defendant from misconduct by the state." *State v. Brown*, 38 Ohio St.3d 305, 310 (1988). When determining whether identification procedures are unnecessarily suggestive such that due process requires suppression of the identification, we engage in a two-part analysis: (1) We first determine whether the identification procedure was unnecessarily suggestive; and (2) if so, we determine whether the identification was ultimately unreliable under all of the circumstances. *State v. Turner*, 9th Dist. Summit No. 28775, 2018-Ohio-3898, ¶ 10. Thus, even if an identification process is unnecessarily suggestive, it does not violate due process if it possesses sufficient indicia of reliability. *State v. Mitchell*, 9th Dist. Summit No. 21413, 2003-Ohio-5614, ¶ 8, citing *State v. Parker*, 53 Ohio St.3d 82, 87 (1990). *See also State v. Allen*, 73 Ohio St.3d 626, 634 (1995) (stating that even if the use of a single photo for identification purposes is suggestive, reliable identification testimony may be admitted regardless of the flaws in the procedure).

{¶13} The facts in Mr. Alford's case are analogous to the facts in our recent decision in *State v. Tyler*, 9th Dist. Summit No. 29225, 2019-Ohio-4661. In *Tyler*, a shooting occurred just outside of an Akron bar, and police reviewed surveillance footage from the bar. *Id.* at ¶ 10. They focused on five unknown individuals, pinpointing one as the shooter, accompanied by four of his friends, and created still photographs of each man from the security footage. *Id.* The police released the stills of the four friends and asked them to come forward, which they all did. *Id.* Each of the four men eventually admitted that they knew the fifth man and provided his name as well as some nicknames. *Id.* The trial court, in denying a motion to suppress those identifications, found that the men's familiarity with Mr. Tyler greatly reduced the chances of a police-induced improper identification, as did the fact that they were with him immediately before and after the incident. *Id. See also State v. Smith*, 11th Dist. Portage No. 2016-P-0074, 2018-Ohio-4799, ¶ 47, quoting *State v. Huff*, 145 Ohio App.3d 555, 564 (1st Dist.2001) ("'A strong showing of reliability can arise from the fact that a victim knew the perpetrator of a crime before the crime was committed.'"). The court noted that the police were not asking the individuals to identify Mr. Tyler as the shooter—as they already knew who the shooter was—but were only asking the men for his name. *Tyler* at ¶ 11. The court concluded, based on the totality of the circumstances, that the police did not employ an unnecessarily suggestive identification procedure in violation of Mr. Tyler's constitutional rights. *Id.* This Court affirmed on appeal and found Mr. Tyler's argument that the police employed an unduly suggestive identification procedure by only showing one picture of Mr. Tyler, instead of creating an entire photo array, to be misguided. *Id.* at ¶ 12-13.

{¶14} "A suggestive identification procedure is one that suggests to a victim or eyewitness that a specific person is the perpetrator." *Tyler* at ¶ 13. "The law guards against suggestive procedures due to the inherent danger they will result in an unreliable identification, i.e., one that

misidentifies the perpetrator due to the state's action." *Id.*, citing *Neil v. Biggers*, 409 U.S. 188, 196-198 (1972). As we determined in *Tyler*, however, no such danger existed in this case because the police never asked the witnesses to identify Mr. Alford *as the shooter*. *Id.* The police had reviewed the Baho surveillance footage and sought to identify two men seen in the video. Once the witnesses came forward with information about a man who might have been involved in the crime, the police showed the witnesses the still photographs not to identify Mr. Alford as the shooter, but to merely confirm that the man in the photo was the man they were familiar with and were speaking about, i.e., the man T.T. knew as "Rollie" whom he saw hiding outside of D.A.'s apartment and threatening to shoot him days before the murder, the man in the gray hat outside of the Baho that night whom D.A. told W.A. had threatened to shoot him earlier that morning, and the man T.W. knew as "Rollie" in her neighborhood. Because the police did not employ an unnecessarily suggestive procedure to identify Mr. Alford as the shooter, we conclude that the trial court properly denied his motion to suppress. *See id.*

{¶15} Accordingly, Mr. Alford's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR A NEW TRIAL

{¶16} In his second assignment of error, Mr. Alford argues that the trial court erred in denying his motion for a new trial. We disagree.

{¶17} Crim.R. 33(A) allows a defendant to move for a new trial when his substantial rights have been materially affected. Mr. Alford filed his motion pursuant to Crim.R. 33(A)(1)-(3), which provide that a new trial may be granted for any of the following causes materially affecting his substantial rights: (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from

having a fair trial; (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state; or (3) Accident or surprise which ordinary prudence could not have guarded against. "By its terms, Crim.R. 33 does not require a hearing on a motion for a new trial, and this Court has consistently held that the decision to conduct a hearing is one that is entrusted to the discretion of the trial court." *State v. Jalowiec*, 9th Dist. Lorain No. 14CA010548, 2015-Ohio-5042, ¶ 20.

{¶18} This Court reviews a trial court's decision to deny a motion for new trial for an abuse of discretion. *State v. Pyle*, 9th Dist. Summit No. 28802, 2018-Ohio-3160, ¶ 47. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶19} Mr. Alford took issue with two separate incidents in his motion for a new trial. First, he argued that he suffered prejudice when an officer testifying at trial opened up a sealed evidence bag containing the victim's hat and a piece of the victim's skull unexpectedly fell out of the hat and onto the floor, in full view of the jury. The officer spontaneously picked up the item and stated, "That's actually a bone fragment." Defense counsel objected and, after a brief sidebar, the court sustained the objection and instructed the jury to disregard the officer's testimony regarding the supposed bone fragment falling from the hat. The court told the jurors that the officer was not qualified to make a determination about what the material was that fell from the hat, and again instructed them to disregard the officer's statement and to not consider it for any purpose. The court also denied counsel's oral motion for a mistrial.

{¶20} In denying Mr. Alford's motion for a new trial, the trial court found that it had promptly issued a curative instruction to the jury, juries are presumed to follow a court's instructions, and nothing in the record indicated that the jury did not follow the court's instructions. It also found that the officer's stray comment was not prejudicial and did not deprive Mr. Alford of a fair trial, as this was a murder case involving a victim being shot four times, including once in the head. The chief medical examiner testified as to the victim's cause of death, and several photographs of the victim's body were admitted into evidence. Thus, even if the jury was unable to disregard the officer's statement, the court determined it was merely cumulative of other evidence presented at trial.

{¶21} Mr. Alford argues on appeal that he was prejudiced because there was no way the jury could "unsee" the bone fragment and, unlike photographs or testimony describing details or injuries, a surprising display of a skull fragment risked arousing the jurors' sympathies, evoking a sense of horror, and appealing to an instinct to punish. Although it is most certainly irregular for something to fall from a murder victim's hat in the midst of a jury trial and for a testifying witness to then exclaim that it was a bone fragment that fell, Mr. Alford has not demonstrated that he was prejudiced by this unexpected incident. The State alleged that Mr. Alford murdered D.A. by shooting him multiple times, including once in the head, and the chief medical examiner testified that D.A. died from these gunshot wounds. Nevertheless, the trial court sustained defense counsel's immediate objection to the officer's statement as to what fell from the hat and then twice instructed the jury to disregard that statement. Jurors are presumed to follow the trial court's instructions, and Mr. Alford has not directed us to anything in the record indicating that the jury disregarded the court's curative instructions here. *See State v. Vactor*, 9th Dist. Lorain No.

02CA008068, 2003-Ohio-7195, ¶ 47. The trial court therefore did not err in denying Mr. Alford's motion for a new trial as to this ground for relief.

{¶22} Mr. Alford also argued in his motion for a new trial that the jury was contaminated on the evening of Friday, March 1, 2019, after it ceased deliberations for the weekend. Four of the jurors were approached by some individuals in the parking garage that evening, one of whom expressed thanks for their work on his father's case, in what Mr. Alford characterized as "an obvious attempt to garner sympathy and support for the [S]tate's case." None of the jurors responded to the stranger's comment. On Monday morning, the four jurors discussed the incident in the presence of the remaining jurors when they reconvened in the jury room, and one of them informed the court of the incident during their first break in deliberations. Defense counsel moved for a mistrial.

{¶23} "[A] trial court's consideration of a motion for a new trial based on juror misconduct involves two steps: (1) 'a determination of whether misconduct actually occurred,' and (2) 'whether that misconduct materially prejudiced the defendant's substantial rights.'" *Pyle* at ¶ 50, quoting *Jalowiec* at ¶ 48. Although Crim.R. 33(C) requires the causes enumerated in Crim.R. 33(A)(2) and (3) to be sustained by affidavit showing their truth, the trial court here found that such affidavits were not required because the relevant facts regarding the alleged juror misconduct were addressed on the record during trial. When a trial court learns about an improper outside communication with a juror, the court must hold a hearing to determine whether the communication biased the juror. *State v. Smith*, 9th Dist. Wayne Nos. 01CA0039 and 01CA0055, 2002-Ohio-4402, ¶ 57, citing *State v. Phillips*, 74 Ohio St.3d 72, 88 (1995) and *Remmer v. United States*, 347 U.S. 227, 229-230 (1954).

{¶24} In denying Mr. Alford's motion for a new trial as to this ground for relief, the trial court found that it had questioned the four jurors and each stated that the stranger's comment had no impact on them and affirmed that they could ignore the comment and continue with deliberations. It further found that it questioned the remaining jurors individually, and each one confirmed they heard about the unsolicited comment. Each juror stated that the incident did not have any impact on them and affirmed that they could ignore the comment and continue with deliberations. The court then questioned the attorneys as well as Mr. Alford, and Mr. Alford indicated he was satisfied that the jury could continue to deliberate in a fair manner. Mr. Alford also withdrew his motion for a mistrial and the parties agreed to keep the four jurors in question. The court found that the jurors did not commit any misconduct in merely hearing the unsolicited comment, but *did* commit misconduct by failing to immediately report the incident and by sharing it with the rest of the jury. Nonetheless, the court found that the misconduct did not materially prejudice Mr. Alford's substantial rights, as the jurors all agreed they could ignore the comment and continue with deliberations. It also noted Mr. Alford's withdrawal of his motion for a mistrial, but his subsequent renewal of all motions and objections after the jury already returned a unanimous guilty verdict for murder.

{¶25} Mr. Alford argues on appeal that there is "no question" the four jurors were influenced by the incident as they were "excused from service and replaced on the panel." He contends there is uncertainty, however, as to the effect their discussions of the incident had on the remaining jurors, and the trial court should have sua sponte granted a mistrial. Contrary to Mr. Alford's belief, the record does not indicate that the four jurors were excused from service and replaced on the panel. The record is abundantly clear that after a thorough hearing was held, in which each juror was questioned as to the effect the incident had on them as well as their ability

to continue to be fair and impartial, the trial court and both parties agreed that the jurors would not be dismissed, but would instead remain on the jury and continue with deliberations. Although Mr. Alford initially moved for a mistrial, he withdrew that motion after all jurors had been questioned and after private discussions with defense counsel. The record belies Mr. Alford's argument that the effect on the remaining jurors is uncertain, as the trial court questioned them all individually, the jurors stated it had no impact on them, and they affirmed that they could ignore it and continue with deliberations. Although minimal juror misconduct occurred in the jurors' discussion of the incident amongst themselves and in the delay in reporting it to the court, Mr. Alford has not shown how his material rights have been substantially prejudiced.

{¶26} Upon review of the record, this Court concludes that the trial court did not abuse its discretion in denying Mr. Alford's motion for a new trial, as its decision was not unreasonable, arbitrary, or unconscionable. Neither the incident with the officer on the witness stand nor the incident with the jurors materially affected Mr. Alford's substantial rights. Accordingly, Mr. Alford's second assignment of error is overruled.

III.

{¶27} Mr. Alford's assignments of error are both overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

DONALD R. HICKS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO GUEST, Assistant Prosecuting Attorney, for Appellee.