[Cite as *State v. Ocasio*, 2016-Ohio-4686.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

NELSON OCASIO

    Appellant

C.A. No.      15CA010773

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.      14CR089138

DECISION AND JOURNAL ENTRY

Dated: June 30, 2016

HENSAL, Judge.

{¶1} Nelson Ocasio appeals his convictions for rape and gross sexual imposition in the Lorain County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} The victim, J.B., was born on October 16, 2007. In the spring of 2013, J.B. lived with her mother ("Mother") and uncle in the same apartment complex as Nelson Ocasio ("Ocasio"). At trial, Mother testified that she and Ocasio were "friendly neighbors" and that J.B. played ball with Ocasio on occasion.

{¶3} On May 26, 2013, J.B., her uncle, and Mother went to church. After returning from church, Mother allowed J.B. to play outside while she cleaned the apartment. According to J.B., she visited another neighbor first, and then went to Ocasio's apartment. J.B. testified that Ocasio "put [her]" on the couch in his living room and touched the "[i]nside" of her vagina with his hand, which "hurt" and made her feel "[s]ad." J.B. asked Ocasio to stop twice, and he

stopped after her second request. J.B. then left Ocasio's apartment and headed home. Ocasio apparently followed her back to her apartment.

{¶4} According to Mother, she was cleaning the bathroom when Ocasio entered her apartment; J.B. entered a few moments later. Mother testified that Ocasio had a beer in his hand and looked "drunk or high[.]" Ocasio told Mother that Mother needed to speak with J.B. because J.B. told him that someone had touched her. Mother immediately questioned J.B. as to who touched her, but J.B. indicated that she was told "not to tell anyone." When Mother asked J.B. who told her that, J.B. pointed to Ocasio. Mother yelled for her brother, who was in the living room, and asked J.B. to "explain once again what happened" to her brother. After J.B. explained what happened, Mother's brother punched Ocasio in the face, and Ocasio left the apartment.

{¶5} Mother called 911 and took J.B. to The Nord Center for a physical examination. A sexual assault nurse examiner ("SANE") examined J.B., but did not find any signs of a physical injury. The SANE nurse testified, however, that 90 to 95 percent of sexual-abuse examinations result in normal physical findings.

{¶6} A grand jury indicted Ocasio on one count of rape in violation of Revised Code Section 2907.02(A)(1)(b) with a repeat-violent-offender specification and one count of gross sexual imposition in violation of Section 2907.05(A)(4). Ocasio entered a plea of not guilty. Given the victim's age (seven at the time of trial), the trial court conducted a hearing to determine J.B.'s competency to testify. The trial court found that J.B. could perceive factual experiences to recollect, could communicate her observations, and could differentiate the truth from a lie. Despite defense counsel's objection, the trial court found that J.B. was competent to testify. The case proceeded to a jury trial.

{¶7} Ocasio did not testify at trial, nor did he present any witnesses on his behalf. After hearing testimony from J.B., Mother, and the SANE nurse, the jury found Ocasio guilty of both charges. The trial court merged the conviction for gross sexual imposition with the conviction for rape for purposes of sentencing, and sentenced Ocasio to fifteen years to life. The trial court did not impose an additional sentence for the repeat-violent-offender specification. Ocasio now appeals his convictions, raising five assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY ON THE APPLICABLE *MENS REA* FOR THE OFFENSES OF RAPE (R.C. 2907.02) AND GROSS SEXUAL IMPOSITION (R.C. 2907.05) AND THEREBY DENIED THE APPELLANT DUE PROCESS OF LAW AND A FAIR TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶8} In his first assignment of error, Ocasio argues that the trial court erred by failing to instruct the jury on the applicable mens rea for rape and gross sexual imposition. As a result, he argues that he was denied due process of law and a fair trial as guaranteed by the United States Constitution.

{¶9} As both parties concede, Ocasio's trial counsel did not object to the jury instructions at trial. We, therefore, apply a plain error standard of review. *State v. Reed*, 9th Dist. Wayne No. 12CA0051, 2013-Ohio-3970, ¶ 65. The doctrine of plain error requires that there must be: (1) a deviation from a legal rule; (2) that is obvious, and; (3) that affects the appellant's substantial rights. *State v. Hardges*, 9th Dist. Summit No. 24175, 2008–Ohio–5567, ¶ 9. An error affects the appellant's substantial rights if it affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Notice of plain error under Crim.R. 52(B) is to be

taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶10} Ocasio's argument that the trial court erred by failing to instruct the jury on the applicable mens rea for statutory rape lacks merit. As the State points out, rape under Section 2907.02(A)(1)(b) is a strict-liability offense, rendering Ocasio's mental state irrelevant. *See In re D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671, ¶ 13 ("R.C. 2907.02(A)(1)(b) criminalizes what is commonly known as 'statutory rape[]' [and] * * * holds offenders strictly liable * * *."); *In re K.A.*, 8th Dist. Cuyahoga Nos. 98924 and 99144, 2013-Ohio-2997, ¶ 11 ("Statutory rape is a strict-liability offense because it does not require a mens rea."); *In re T.A.*, 2d Dist. Champaign Nos. 2011-CA-28 and 2011-CA-35, 2012-Ohio-3174, ¶ 25 (stating same). We, therefore, find no error in the trial court's instruction for rape under Section 2907.02(A)(1)(b).

{¶11} With respect to gross sexual imposition, the State concedes that it was required to establish that Ocasio touched J.B. "for the *purpose* of sexually arousing or gratifying either person." (Emphasis added.) R.C. 2907.01(B); R.C. 2907.05(A)(4); *State v. Dunlap,* 129 Ohio St.3d 461, 2011-Ohio-4111, ¶ 26. While the trial court did not specifically instruct the jury on the mens rea of "purpose," it did define "sexual contact" as: "any touching of an erogenous zone of another * * * for the *purpose* of sexually arousing or gratifying either person." (Emphasis added.)

{¶12} This Court's prior holding in *State v. Edwards*, 9th Dist. Lorain No. 12CA010274, 2013-Ohio-3068, ¶ 21-26, is instructive on this issue. There, the trial court did not instruct the jury on the mens rea of "purpose," but, like this case, did define "sexual contact" under Section 2907.01(B). *Id.* at ¶ 24. Although we held that the trial court erred by failing to define "purpose," we further held that such error did not rise to the level of plain error "because a

specific instruction on the definition of purpose would not have produced a different result at trial." *Id.* at ¶ 26. In doing so, we noted that "[p]urpose is a commonly used word and is readily understood." *Id.* at ¶ 25.

{¶13} Because the trial court instructed the jury on the definition of "sexual contact" under Section 2907.01(B), we hold that any error in its failure to specifically define the mens rea of "purpose" did not rise to the level of plain error. *Edwards* at ¶ 24-26. Ocasio's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE LOWER COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THE SEVEN (7) YEAR OLD WITNESS COMPETENT TO TESTIFY IN VIOLATION OF APPELLANT'S RIGHT TO CONFRONTATION AND A FAIR TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶14} In his second assignment of error, Ocasio argues that the trial court abused its discretion by finding J.B. competent to testify. Specifically, Ocasio argues that the trial court erred because it neglected to make a finding regarding J.B.'s appreciation for her responsibility to tell the truth. He also argues that J.B.'s demeanor "evidenced a true lack of perception and appreciation for the seriousness of the proceedings as well as the responsibility to be truthful[.]"

{¶15} "Decisions on witness competency are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion." *State v. Middlesworth*, 9th Dist. Wayne No. 05CA0016, 2006-Ohio-12, ¶ 7. An abuse of discretion implies that a trial court was unreasonable, arbitrary, or unconscionable in its judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶16} In *State v. Frazier*, the Ohio Supreme Court set forth five factors a court must consider when making a determination as to whether a child under ten years old is competent to testify. 61 Ohio St.3d 247, 251 (1991). Those factors include:

> (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity[;] and (5) the child's appreciation of his or her responsibility to be truthful.

*Id.* Notably, "[t]he trial court errs in finding a child witness competent without sufficient evidence before it to consider each of the five *Frazier* factors." *State v. Wells*, 9th Dist. Summit No. 21149, 2003-Ohio-3162, ¶ 8. A deficiency at the competency hearing, however, "can be cured if the child's subsequent testimony at trial demonstrates that the trial court was justified in finding the child competent to testify." *Id.* at ¶ 9.

{¶17} Ocasio challenges the trial court's competency decision with respect to the fifth *Frazier* factor only, that is, J.B.'s appreciation of her responsibility to be truthful. During the competency hearing, the trial court specifically asked J.B. whether she was going to tell the truth, to which she answered: "Yes." At trial, prior to giving any substantive testimony, the State asked J.B. what the "[n]umber one" most important thing was for her to do that day, to which she responded: "[t]ell the truth." We, therefore, find that the trial court could have reasonably concluded that J.B. appreciated her responsibility to be truthful.

{¶18} Based upon our review of the testimony presented at the competency hearing and at trial, we cannot conclude that the trial court's decision to allow J.B. to testify was unreasonable, arbitrary, or unconscionable. *See Middlesworth*, 2006-Ohio-12, at ¶ 9. Ocasio's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE APPELLANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL DUE TO REPEATED INSTANCES OF PROSECUTORIAL MISCONDUCT.

{¶19}  In his third assignment of error, Ocasio argues that he was denied due process and a fair trial because the prosecutor engaged in the following acts of prosecutorial misconduct during closing argument:  (1) he improperly vouched for J.B.'s credibility; and (2) he argued the wrong mens rea for rape and gross sexual imposition.  Because Ocasio's counsel did not object at the trial court, we apply a plain error standard of review.  *See State v. Baston*, 85 Ohio St.3d 418, 427 (1999).

{¶20}  "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant."  *State v. Geiger*, 9th Dist. Medina No. 12CA0006-M, 2012-Ohio-4002, ¶ 8, quoting *State v. Smith*, 14 Ohio St.3d 13, 14 (1984).  "To establish prejudice, an accused must show that there is a reasonable probability that, but for the prosecutor's improper remarks, the result of the proceeding would have been different."  *State v. Hodge*, 9th Dist. Lorain No. 98CA007056, 2000 WL 1533917, *7 (Oct. 18, 2000).  We must "view the [prosecutor's] closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial."  *State v. Treesh*, 90 Ohio St.3d 460, 466 (2001).

{¶21}  We begin our analysis with Ocasio's argument that the prosecutor improperly vouched for J.B.'s credibility.  "In order to vouch for the witness, the prosecutor must imply knowledge of facts outside the record or place the prosecutor's personal credibility in issue."  *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 117.  During the rebuttal portion of his closing argument, the prosecutor stated: "[t]his brave seven-year-old got up on the witness stand

and told you about a horrible event that happened to her." Ocasio argues that this statement impermissibly bolstered J.B.'s credibility because it injected the prosecutor's own belief that J.B. was brave and that a horrible event happened.

{¶22} Even assuming that the prosecutor's statement was improper, we cannot say that it prejudicially affected Ocasio's substantial rights. *Geiger* at ¶ 8. The prosecutor made the statement during the rebuttal portion of his closing argument after defense counsel repeatedly attacked J.B.'s credibility. Viewing the prosecutor's closing argument in its entirety, we cannot say that, but for this isolated comment, the outcome of the trial would have been different. *Hodge* at *7; *State v. Messer*, 9th Dist. Wayne No. 95CA0029, 1995 WL 760387, *3 (Dec. 27, 1995) (holding that the prosecutor's comment during the rebuttal portion of closing argument that the witnesses were "very truthful" did not deprive the defendant of a fair trial.); *see also State v. Logan*, 9th Dist. Summit No. 19726, 2000 WL 1289413, *6-7 (Sept. 13, 2000) (holding that a prosecutor's remark indicating that a witness was credible did not rise to the level of plain error).

{¶23} We now turn to whether the prosecutor's statements implying that both charges were strict-liability offenses amounted to prosecutorial misconduct. As an initial matter, we find nothing improper with the prosecutor's statements as they relate to the charge of rape under Section 2907.02(A)(1)(b) because it is a strict-liability offense. *See In re D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671, ¶ 13. The prosecutor did, however, improperly argue that gross sexual imposition is a strict-liability offense. But as discussed above, the trial court instructed the jury as to the definition of "sexual contact," which includes the mens rea of "purpose." Importantly, "[j]uries are presumed to follow trial court instructions." *State v. Jones*, 91 Ohio St.3d 335, 353 (2001). Because the trial court did instruct the jury on the mens rea of "purpose" by way of its

instruction on the definition of "sexual contact," and because the jury is presumed to have followed the trial court's instructions, we cannot say that the prosecutor's statements relating to strict liability affected the outcome of the trial. Ocasio's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE VERDICT AND JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶24} In his fourth assignment of error, Ocasio argues that the verdict was against the manifest weight of the evidence. If a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶25} Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶26} We decline to address Ocasio's challenge to his conviction for gross sexual imposition because the trial court merged that offense with his rape conviction, and sentenced Ocasio on the rape conviction only. *See State v. Romo*, 9th Dist. Lorain No. 09CA009647, 2010-Ohio-4067, ¶ 21. With respect to the rape conviction, Ocasio argues that the evidence presented regarding penetration, an essential element to the crime of rape, was so equivocal that a reasonable jury could not have concluded that it constituted proof beyond a reasonable doubt. In

this regard, he argues that J.B.'s testimony was "extremely contradictory" and that the State, through the use of leading questions, coaxed her into testifying that Ocasio touched her vagina.

{¶27} "Credibility determinations are primarily within the province of the trier of fact." *State v. Just*, 9th Dist. No. 12CA0002, 2012-Ohio-4094, ¶ 42, citing *State v. Violett*, 9th Dist. Medina No. 11CA0106–M, 2012–Ohio–2685, ¶ 11. "The fact-finder 'is free to believe all, part, or none of the testimony of each witness.'" *Id.*, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011–Ohio–3250, ¶ 35. This is because "the [jury] is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino* 89 Ohio App.3d 646, 659 (8th Dist.1993).

{¶28} At trial, J.B. testified that she went to Ocasio's apartment, that he "put [her]" on the couch, that he touched the "inside" of her vagina with his hand, and that it "hurt[.]" Further, Mother testified that, after questioning J.B., J.B. indicated that Ocasio had touched her.

{¶29} Ocasio argues, however, that the State improperly elicited responses from J.B. using "clearly leading questions[.]" "Ohio courts[, however,] have consistently held leading questions asked of a child on direct examination * * * are not prohibited." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 30. Although J.B.'s testimony was seemingly inconsistent at times, it was "the jury's province to take note of [the] inconsistencies * * * and resolve or discount them accordingly." *State v. Davis*, 9th Dist. Summit No. 26994, 2014-Ohio-687, ¶ 14.

{¶30} Having reviewed the record, we cannot say that the jury clearly lost its way when it accepted J.B. and Mother's version of events. *Thompkins*, 78 Ohio St.3d at 387. We,

therefore, hold that Ocasio's rape conviction was not against the manifest weight of the evidence. Ocasio's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE APPELLANT['S] RIGHTS PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.

**{¶31}** In his fifth assignment of error, Ocasio argues that his trial counsel was ineffective because: (1) they failed to object to the jury instructions, which did not include the proper mens rea for the offenses; (2) they failed to object to the State's witness vouching during closing argument, as well as the State's improper statement regarding the applicable mens rea; and (3) they failed to object to leading questions by the prosecutor that assumed facts not in evidence. We decline to address Ocasio's first two arguments given our disposition of his first and third assignments of error. Our analysis, therefore, will focus on Ocasio's argument that his trial counsel was ineffective because they failed to object to the State's leading questions that assumed facts not in evidence.

**{¶32}** To prevail on a claim of ineffective assistance of counsel, Ocasio must show: (1) that counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).

**{¶33}** A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome

the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

{¶34} Ocasio cites the following exchanges between the State and J.B. in support of his argument that his defense counsel was ineffective because they failed to object to the State's leading questions that assumed facts not in the record:

> Q: Okay; all right. Has anybody ever done a bad touch to you?
> A: (Nodding Head.)
> Q: You have to answer out loud.
> A: Yes.
> Q: Okay. And when they did a bad touch, where did they touch you?
> A: (Indicating.)
> Q: Tell me the name.
> A: Ladybug [J.B.'s name for her vagina].
> Q: Ladybug, okay. Who touched you in your ladybug?
> A: Now I forget the name.
> Q: Okay. Well, did you have a nickname?
> A: No, I don't. I don't know that. I don't know what his nickname is.

* * *

> Q: [J.B.], when that man in the red touched you in your ladybug, where did it happen?
> A: In - -
> Q: Did it happen in your apartment or your house or somebody else's?

{¶35} Although his merit brief is unclear, we presume Ocasio takes issue with the prosecutor's questions presuming J.B. was touched "in" her vagina, and his leading question relating to where the incident occurred. As it relates to the latter, we note that Ocasio's trial counsel did object, but that the trial court overruled her objection:

> [Defense Counsel]: Objection.

* * *

> [Defense Counsel]: Leading, your Honor. He started naming places.
> The Court: Well, I'm going to overrule it just because of the age of the witness.

{¶36} While Ocasio's trial counsel did not object to the prosecutor's questions presuming J.B. was touched "in" her vagina, we cannot conclude that their failure to do so constituted ineffective assistance of counsel. As noted above, the prosecutor asked J.B. the following leading questions:

Q: Ladybug, okay. Who touched you *in* your ladybug?
A: Now I forget the name.

* * *

Q: [J.B.], when that man in the red touched you *in* your ladybug, where did it happen?
A: In - -
Q: Did it happen in your apartment or your house or somebody else's?
[Defense Counsel]: Objection.

{¶37} This Court has stated that "leading questions asked of a child on direct examination * * * are not prohibited" and "are often permitted in order to pinpoint specific details and times." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 30; *State v. Liddle*, 9th Dist. Summit No. 23287, 2007-Ohio-1820, ¶ 30. Further, the Ohio Supreme Court has held that "it is within the trial court's discretion to allow leading questions on direct examination" and that trial counsel's failure to object does not constitute ineffective assistance of counsel. *State v. Jackson*, 92 Ohio St.3d 436, 449 (2001); *State v. Kiley*, 9th Dist. Lorain No. 10CA009757, 2011-Ohio-1156, ¶ 4. Accordingly, Ocasio's trial counsel "was not ineffective for not objecting to the prosecutor's leading questions." *Kiley* at ¶ 4. Ocasio's fifth assignment of error is overruled.

III.

{¶38} Ocasio's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

MOORE, J.
WHITMORE, J.
CONCUR.


APPEARANCES:

ROBERT A. DIXON, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and ELIZABETH LINBERG, Assistant Prosecuting Attorney, for Appellee.