[Cite as *State v. Pyle*, 2018-Ohio-3160.]

STATE OF OHIO        )        IN THE COURT OF APPEALS
                    )ss:     NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                  C.A. No.     28802

     Appellee

     v.                         APPEAL FROM JUDGMENT
                                 ENTERED IN THE
ROLAND B. PYLE            COURT OF COMMON PLEAS
                                 COUNTY OF SUMMIT, OHIO
     Appellant            CASE No.     CR-2016-05-1710

DECISION AND JOURNAL ENTRY

Dated: August 8, 2018

SCHAFER, Presiding Judge.

**{¶1}** Defendant-Appellant, Roland B. Pyle, appeals from his conviction in the Summit County Court of Common Pleas. For the reasons that follow, we affirm.

I.

**{¶2}** On February 1, 2016, Pyle's then thirteen-year-old stepdaughter, J.N., disclosed to her school counselor that Pyle sexually abused her in December of 2013. As a mandatory reporter of child abuse and neglect, the school counselor reported J.N.'s allegations of abuse to the school principal and to Children Services. As a result, J.N. and her younger sisters were taken into the custody of Children Services and placed in foster care. On February 17, 2016, J.N. underwent a sexual abuse evaluation at the Akron Children's Hospital CARE Center, which included a review of J.N.'s case and medical history, an interview with a social worker, and a physical examination. The pediatric nurse practitioner evaluating J.N. made the diagnosis of child sexual abuse.

{¶3} On June 1, 2016, the Summit County Grand Jury indicted Pyle on one count of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree. The rape charge included a sexually violent predator specification pursuant to R.C. 2941.148. Pyle entered a plea of not guilty to the charges.

{¶4} The matter proceeded to a jury trial, though Pyle waived his right to a jury trial on the sexually violent predator specification. At trial, the State presented five witnesses. Pyle presented one witness in his defense. After deliberation, the jury returned its verdicts finding Pyle guilty of the offenses of rape and gross sexual imposition.

{¶5} The trial resumed for the second phase for the court to make a finding on the specification to the rape charge. Just prior to the commencement of that portion of the bifurcated trial, Pyle made an oral motion for a new trial based on an allegation of potential juror misconduct, and the trial court overruled the motion. The trial court found Pyle guilty of the sexually violent predator specification.

{¶6} The trial court merged the rape and gross sexual imposition charges for the purpose of sentencing. The trial court sentenced Pyle to a mandatory term of life imprisonment without the possibility of parole, and waived cost. Further, the trial court adjudicated Pyle a Tier III Sex Offender/Child Victim Offender Registrant.

{¶7} Pyle timely appeals his conviction and raises eight assignments of error for our review. For ease of analysis, we consolidate and rearrange the order of the assignments of error.

II.

**Assignment of Error III**

**The conviction for rape was against the sufficiency of the evidence[.]**

**Assignment of Error IV**

**The conviction for rape was against the manifest weight of the evidence[.]**

{¶8}  In his third and fourth assignments of error, Pyle contends his conviction for rape in violation of R.C. 2907.02(A)(1)(b) is not supported by sufficient evidence and is against the manifest weight of the evidence.  Pyle argues that the evidence did not establish anal penetration, and further argues that there was insufficient evidence that the alleged acts underlying the rape charge occurred during the date range stated in the indictment.  We disagree.

**A.  Standard of Review**

{¶9}  "A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations."  *State v. Harrington*, 9th Dist. Lorain No. 16CA010961, 2018-Ohio-2088, ¶ 6.  A challenge to the sufficiency of a criminal conviction presents a question of law, which we review de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Id*.  Although we conduct a de novo review when considering a sufficiency of the evidence challenge, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses as those functions belong to the trier of fact.  *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7.

{¶10} A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins* at 387. Accordingly, when applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

**B. Evidence of the Year the Events Occurred**

{¶11} Pyle argues that the State failed to prove that the alleged events giving rise to his rape conviction occurred during the date range stated in the indictment: December 20-22 of 2013. R.C. 2907.02(A)(1)(b) provides in relevant part that

> [n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

"[P]recise times and dates are not ordinarily essential elements of an offense * * *." *State v. Young*, 9th Dist. Lorain No. 15CA010803, 2017-Ohio-1400, ¶ 8, quoting *State v. Bennett*, 9th Dist. Lorain No. 10CA009917, 2011-Ohio-6679, ¶ 11, quoting *State v. Ritchie*, 9th Dist. Lorain No. 95CA006211, 1997 Ohio App. LEXIS 1277, at 6 (Apr. 2, 1997). "It has been widely held in Ohio that an indictment involving child sexual abuse need not specify exact dates and times of the alleged offenses." *Id.* quoting *Ritchie*. The date of the sexual assault in this case is relevant to the extent that the State must establish, as an element of R.C. 2907.02(A)(1)(b), that J.N. was less than thirteen years of age when it occurred.

{¶12} During her testimony, J.N. described the events leading up to the incident in the bedroom where she alleged Pyle sexually abused her. J.N. testified that she had been living at 677 West Hopocan Ave. in Barberton with her mother, Stacy Pyle; her stepfather, Pyle; and her two younger half-sisters C.P. and A.P., both the biological children of Stacy and Roland Pyle. J.N.'s family had recently been evicted from the Hopocan Ave. home, and they were staying at the home of Dave Besozzi and Anna Carpenter.

{¶13} J.N. testified that she and her family returned to the Hopocan Ave. home, despite the eviction, just before her birthday. They were at the Hopocan Ave. home on Saturday December 21, 2013, which would have been J.N.'s eleventh birthday, when police arrived and arrested her mother. J.N. stated that she and her sisters remained at the Hopocan Ave. home with Pyle after their mother was taken to jail.

{¶14} After her mother's arrest, J.N. explained, she felt the need to "stand up and take care of [her] little sisters[.]" J.N. found clean clothes for her sisters and put C.P. and A.P. to bed in the upstairs bedroom that the three girls shared. J.N. then went to the bedroom where her mother and Pyle typically slept because she wanted to watch television while she fell asleep, which, she stated, she had occasionally done before. J.N. testified that she later awoke to Pyle pulling off her pants, ignoring her request that he stop, and then inserting his penis into her butt.

{¶15} J.N. testified that while Pyle had his penis in her butt, she told him that she wanted to use the restroom. Pyle "didn't let [her] use the restroom until he finished doing something." After, on her way to the only restroom which was located downstairs, J.N. encountered her sister, C.P. C.P. asked J.N. if she was okay, and J.N. replied "yes." J.N. testified that Pyle followed her downstairs and into the restroom where he told J.N. he "would never do it again." Thereafter, they hugged and she went upstairs to sleep with her little sisters.

{¶16} J.N. testified that she did not disclose the incident to her mother or any family members because she "she felt scared and confused." It was not until February 1, 2016, that J.N. decided to tell her school counselor, Michelle Hartley, what Pyle had done to her. J.N. attributed her decision to finally disclose the incident after three years to her concern over her younger sister nearing the age where it happened to her. J.N. testified:

> At that point my little sister just turned ten when I - - or was about to turn ten, too, because she just turned nine, and he did it to me when I was ten. I was scared for them.

J.N. consistently maintained that Pyle assaulted her on her birthday in December of 2013, and testified that date was significant because her mother "got taken to jail[.]" J.N. also testified that the date was significant "[b]ecause that was supposed to be [her] tenth birthday when you were turning double digits." Upon cross-examination, however, Pyle's trial counsel inquired, "[s]o 2013 would have been your [eleventh] birthday?" In response, J.N. admitted, "I believe so, yes."

{¶17} In support of his argument, Pyle points to an inconsistency in J.N.'s age on the date she claims the incident occurred. The evidence established J.N.'s date of birth as December 21, 2002. Based on her date of birth, J.N. would have turned eleven on her birthday in 2013. However, as noted above, J.N. recalled that she turned ten on the day the incident occurred, which was a significant "double digits" birthday, and she also indicated that she disclosed the incident to Ms. Hartley because she was concerned for her little sisters as they reached or neared the age of ten.

{¶18} C.P., J.N.'s younger sister and the daughter of Pyle, also testified at trial. C.P. was eleven years old as of the date of the trial. She recalled J.N.'s birthday in December of 2013, and remembered that their mother had gone to jail that day. In response to questioning, C.P. expressed some confusion as to whether that was J.N.'s tenth or eleventh birthday, though

her testimony is not entirely clear on that point. C.P. corroborated J.N.'s testimony that, after Stacy Pyle's arrest, the three sisters stayed with Pyle at the Hopocan Ave. home. C.P. testified that she and A.P. were sleeping in the girls' bedroom. C.P. woke up at some point and heard J.N. in their parents' bedroom crying. C.P. asked what was wrong and Pyle told her to go back to bed. She then watched J.N. walk out of their parents' bedroom, and stated that just J.N. and Pyle had been in the room.

{¶19} Benjamin Knor, a police officer for the city of Barberton, also testified at trial. Officer Knor testified that he arrived at 677 Hopocan Ave. at approximately 9:20 p.m. on December 21, 2013, with a warrant for the arrest of Stacy Pyle. Officer Knor noted that there was a "red tag" posted, indicating that the house was condemned. Pyle answered the door and, when officers asked if there was anyone in the home, Pyle initially claimed that he was the only one there before admitting that Stacy Pyle was in the house along with their three children. Pyle told officer Knor that, notwithstanding the red tag, his landlord said that it was okay to be back in the house. Officer Knor testified that officers entered the house and arrested Stacy Pyle on December 21, 2013.

{¶20} It is evident from the record that J.N.'s date of birth is December 21, 2002 and that she was in fact eleven, not ten, years old as of December 21, 2013. It is apparent based on the testimony that she was confused about her age on that date. However, there is no dispute as to the fact that the family had been evicted from the Hopocan Ave. home and that Stacy Pyle was arrested at the home on December 21, 2013, with Pyle and her children present. Furthermore, the facts clearly establish that J.N. was under the age of thirteen when the incident occurred. We conclude that the State presented sufficient evidence in this case to allow the jury to find that the incident occurred within the timeframe stated in this indictment, and that J.N. was under the age

of thirteen at that time. Moreover, this Court's resolution of any conflicting testimony leads us to conclude that the State has met its burden of persuasion on this issue.

## C. Evidence of Anal Penetration

{¶21} Pyle also contends the State failed to prove that he actually penetrated J.N.'s anus. In his brief, Pyle argues that "J.N.'s testimony was vague", that she was "uncertain as to what happened" and there was "[n]o evidence of penetration." Pyle argues that his rape conviction was not supported by sufficient evidence of anal penetration.

{¶22} As stated above, R.C. 2907.02(A)(1)(b) prohibits Pyle from engaging in sexual conduct with a person who is less than thirteen years of age and who is not Pyle's spouse. "Sexual conduct" includes "anal intercourse" and, "without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the * * * anal opening of another." R.C. 2907.01(A). "Penetration, however slight, is sufficient to complete vaginal or anal intercourse." *Id.*

{¶23} J.N. testified that on December 21, 2013, she awoke to Pyle removing her pants and underwear. She stated, "[h]e started doing something weird with his body, and it felt weird, and I didn't know what was going on at the time." She explained that Pyle was "putting his private parts in [hers]." Specifically, she testified that he put his penis in her butt. She was not sure how many times he put his penis in her butt, though she believed it lasted for approximately fifteen to twenty seconds until he was finished. When the State asked J.N. what was happening when he had his penis in her butt she responded that she was "not 100 percent sure" and stated that "[i]t sounded like a weird, wet clapping sound or something."

{¶24} On cross examination Pyle's trial counsel had the following exchange with J.N.:

Q. Thank you. And the question I have to ask you is you stated that [Pyle] put his penis into your butt?

A. Yes.

Q. Now, did that - - was he rubbing that against your butt or was that inserted into - - into you, I guess?

A. I'm not entirely sure to be honest.

Upon redirect examination, J.N. testified:

Q. When it was happening, did you cry?

A. Yes.

Q. You were crying while it was happening?

A. Uh-huh.

Q. Do you recall if you felt any pain?

A. I did.

Q. You did. Okay. And where was the pain?

A. In my butt area.

Q. And [Pyle], was he on top of you, beside you?

A. I was laying on my side and he was on his side.

Q. And did he have - - his hands on you at all?

A. I'm not entirely sure.

Q. Did you feel like you could get away?

A. No.

**{¶25}** Upon this Court's review, we conclude that the record belies Pyle's claim that J.N. indicated Pyle "did not touch her and she simply heard weird noises." In her testimony, J.N.

does express she was somewhat confused about what Pyle was doing to her. She also expresses confusion in responding to the question posed to her on cross-examination. However, she is consistent in her testimony that Pyle put his penis into her butt. Pyle's argument that there is no evidence of penetration is based both upon his mischaracterization of J.N.'s testimony and failure to acknowledge J.N.'s statements that Pyle put his penis in her butt and that she felt pain in her butt area. Reviewing the evidence in a light most favorable to the prosecution, we conclude that the jury could have found that the State proved the element of anal penetration beyond a reasonable doubt. Resolving any inconsistency in the testimony, we further conclude that the State has met its burden of persuasion, and the jury's finding on this element is not against the manifest weight of the evidence.

{¶26} Pyle's third and fourth assignments of error are overruled.

### Assignment of Error I

**The trial court committed reversible and plain error when it classified Pyle a sexually violent predator and sentenced him pursuant to that classification[.]**

{¶27} In his first assignment of error, Pyle contends that the trial court erred in classifying him a sexually violent predator. Pyle contends that the trial court erred in its interpretation and, consequently, its application of R.C. 2971.01(H)(2). We disagree.

{¶28} "'This Court applies a de novo standard of review to an appeal from a trial court's interpretation and application of a statute.'" *State v. Greathouse*, 9th Dist. Medina No. 15CA0024-M, 2016-Ohio-1350, ¶ 8, quoting *State v. Chandler*, 9th Dist. Lorain No. 14CA010676, 2016-Ohio-164, ¶ 7. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

{¶29} The indictment charging Pyle with rape in violation of R.C. 2907.02(A)(1)(b), included a sexually violent predator specification pursuant to R.C. 2941.148. Pursuant to R.C. 2971.02, Pyle waived his right to a jury on the issue and elected to have the trial court determine the sexually violent predator specification. Following the jury trial where the jury found Pyle guilty of rape and gross sexual imposition, the trial court conducted the proceeding to determine the specification.

{¶30} "'Sexually violent predator specification' means a specification, as described in [R.C. 2941.148], that charges that a person charged with a violent sex offense, * * * is a sexually violent predator." R.C. 2971.01(I). A "[s]exually violent predator" is defined as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(1). The plain language of R.C. 2971.01 "unambiguously requires that the three following factors exist before a defendant may be labeled as a sexually violent predator: (1) that on or after January 1, 1997; (2) he commits a sexually violent offense; and (3) it is likely that he will engage in at least one more sexually violent offense in the future." *State v. Hardges*, 9th Dist. Summit No. 24175, 2008-Ohio-5567, ¶ 48. R.C. 2971.01(H)(2)(a)-(f) lists factors that may be considered when determining the likelihood that a defendant will engage in any sexually violent offenses in the future.

{¶31} The trial court found, based on the jury's September 20, 2017 verdict in the present matter, that Pyle had committed a sexually violent offense after January 1, 1997. In addition to the evidence from the current case, the trial court considered evidence of Pyle's prior conviction from 1995 for attempted rape and a journal entry from that same case adjudicating Pyle a "child victim offender" for purposes of registration. The court found that this evidence

established that Pyle "has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense" based on R.C. 2971.02(H)(2)(a), and determined that Pyle was likely to engage in one or more sexually violent offenses in the future. The trial court found Pyle guilty of the sexually violent predator specification.

{¶32} In this assignment of error, Pyle presents varying and somewhat conflicting arguments regarding the nature of the alleged error committed by the trial court. However, it appears that the essence of Pyle's argument is that the trial court erred by basing its decision on the presence of only one R.C. 2971.01(H)(2) factor without weighing or considering the applicability of any of the other factors. Pyle contends "[t]he fact that the General Assembly has stated that any of the factors may be considered as opposed to only one factor need to be found is indicative of the need to examine all factors prior to making a decision." (Sic.) Pyle argues that the statute "is directive in telling the court everything it should consider."

{¶33} Before listing out factors (a) – (f), R.C. 2971.01(H)(2) states that "*any* of the following factors *may* be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses * * *." (Emphasis added.) R.C. 2971.01(H)(2). Thus, the plain language of the statute permits the court to consider any of the factors, and does not require the court to engage in an analysis of all factors. Pyle failed to identify any ambiguity or opportunity for alternative interpretation of the language employed in R.C. 2971.01(H)(2). Further, Pyle's argument fails to recognize that this Court has held that "[o]nly one of the factors listed in R.C. 2971.01(H)(2)(a)-(f) had to be shown for the trial court that [the defendant] is a sexually violent predator." *State v. Wooten*, 9th Dist. Lorain No. 13CA010510, 2014-Ohio-3980, ¶ 39, quoting *State v. Cartwright*, 12th Dist. Preble No. CA2012-03-003, 2013-Ohio-2156, ¶ 27. Pyle has not presented us with a reason to interpret that

statute, or a basis for directing a trial court to engage in any analysis beyond that which is called for in the plain language of the statute.

{¶34}  Upon review, we reject Pyle's argument that the trial court erred by failing to consider all of the factors of R.C. 2971.01(H)(2).  Accordingly, we conclude that Pyle has not identified any error committed by the trial court in finding him guilty on the sexually violent predator specification based on evidence of only one factor: R.C. 2971.01(H)(2)(a).

{¶35}  Pyle's first assignment of error is overruled.

### Assignment of Error II

**The trial court violated Pyle's due process rights when it found an eleven year old child witness competent to testify that (sic) child did not know her right hand from her left and did not understand the difference between the truth and a lie[.]**

### Assignment of Error VII

**The trial court committed reversible error when it held a child competency hearing in the presence of the jury[.]**

{¶36}  Pyle argues that the trial court abused its discretion in determining that an eleven-year-old child—who could not tell her right hand from her left hand, and did not understand the difference between the truth and a lie—was competent to testify at trial.  Further, Pyle argues that the trial court erred by conducting the hearing to determine the competency of the child in front of the jury, and for failing to consider the "*Frazier* criteria" to determine C.P.'s competency to testify at trial.  *See Ohio v. Frazier*, 61 Ohio St.3d 247 (1991), syllabus.  We disagree on both points.

{¶37}  "'Decisions on witness competency are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion.'"  *State v. Ocasio*, 9th Dist. Lorain No. 15CA010773, 2016-Ohio-4686, ¶ 15, quoting *State v. Middlesworth*, 9th Dist. Wayne

No. 05CA0016, 2006-Ohio-12, ¶ 7. An abuse of discretion is more than an error of law or judgment; it implies that a trial court was unreasonable, arbitrary, or unconscionable in its judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**C.P.'s Competency as a Witness**

{¶38} C.P., the younger half-sister of J.N., testified at trial. During her testimony, C.P. stated that she was eleven years old, and that she would soon turn twelve. When the trial judge asked C.P. to raise her right hand to swear her in, C.P. expressed that she did not know her left from her right. The trial judge then inquired as to whether C.P. understood what it means to tell the truth. C.P. responded, "No, not really."

{¶39} The trial judge excused the jurors for a break and had a conversation on the record regarding her concerns about C.P.'s competency to testify. The State, citing its previous discussions with the witness, expressed no concern regarding C.P.'s competency to testify. Pyle's trial counsel indicated serious concerns as to C.P.'s competency and objected to her testimony until "some further investigation was conducted." In discussing the issue with counsel the trial judge clarified that C.P. is presumed competent, that C.P.'s competency was not called "into question based on her age[,]" and, because she is over the age of ten, there was no thought to have a "601 hearing." The trial judge stated that she would voir dire C.P. in the jury's presence to demonstrate that C.P. understood that she could get into trouble for telling a lie. Without further objection, the trial judge questioned C.P. before the jury about her ability to tell the truth and the consequence of failing to tell the truth. Thereafter, C.P. proceeded to testify.

{¶40} Evid.R. 601(A) states that "[e]very person is competent to be a witness except * * * [t]hose of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of

relating them truly." "A plain reading of Evid.R. 601(A) leads to the conclusion that the competency of individuals ten years or older is presumed, while the competency of those under ten must be established." *State v. Clark*, 71 Ohio St.3d 466, 469 (1994), citing *State v. Wallace*, 37 Ohio St.3d 87, 94 (1988). It is undisputed that C.P. was eleven years old at the time of trial. Applying the plain language of Evid.R. 601(A), we conclude that it is inapplicable to C.P. as a child over the age of ten.

{¶41} Pyle concedes that C.P. was eleven years old at the time of trial, but argues "the events she allegedly witnessed occurred when she was either eight or nine years old." On this very issue, the Supreme Court of Ohio held that

> under the plain meaning of Evid.R. 601(A), a child witness who is ten years of age or older at the time of trial, but who was under the age of ten at the time an incident in question occurred, is presumed competent to testify about the event. * * *
>
> A trial judge, in the exercise of his or her discretion, may choose to conduct a voir-dire examination of the child witness if the judge has reason to question the child's competency.

*Clark* at paragraphs one and two of the syllabus. In light of the presumption of competency based on C.P.'s age at the time of trial, it is irrelevant that C.P. was under the age of ten when the events she witnessed occurred.

{¶42} The trial court was not required to conduct a competency hearing or consider the *Frazier* criteria to determine C.P.'s competency to testify at trial. *See Frazier*, 61 Ohio St.3d 247, syllabus (listing the five factors a trial court must take into consideration in determining whether a *child under age ten* is competent to testify.). Consequently, we conclude that Pyle's argument—that trial court erred when it failed to make inquiry into all five *Frazier* factors prior to finding C.P. competent to testify—lacks merit. Pyle's arguments regarding the applicability

of Evid. R. 601(A) and the presumption of competence are misplaced, and we conclude that Pyle has not demonstrated that the trial court abused its discretion in permitting C.P. to testify at trial.

**Child Competency Hearing in the Presence of the Jury**

{¶43}  Pyle argues that it was improper for the trial court to conduct an Evid.R. 601(A) hearing in front of a jury.  Pyle cites to R.C. 2317.01, which discusses the competency of a child under the age of ten as a witness and sets forth requirements for conducting a hearing to determine whether such child is a competent witness.  As discussed above, the trial court was not required to conduct a hearing to determine competency based on Evid.R. 601(A) because C.P. was eleven years old at the time of trial.  For that same reason, R.C. 2317.01 is inapplicable to C.P. as a child over the age of ten.

{¶44}  As stated above, the trial judge did conduct a voir dire of C.P. to address concerns about her ability to distinguish a lie from the truth, and to ensure that C.P. understood that she could get in trouble for lying.  However, the trial court did not conduct a child competency hearing, and was not obligated to conduct such a hearing pursuant to R.C. 2317.01.  Therefore, we conclude that Pyle's argument lacks merit, in that Pyle has not articulated a basis for assigning error to the trial court's inquiry of C.P. in the presence of the jury.

{¶45}  Accordingly, we overrule Pyle's second and seventh assignments of error.

### Assignment of Error VI

**The trial court committed reversible and plain error when it denied [Pyle]'s motion for new trial based upon juror misconduct.**

{¶46}  In his sixth assignment of error, Pyle claims that trial court erred when it denied Pyle's motion for a new trial without first determining whether there was juror misconduct.  We disagree.

{¶47} Pursuant to Crim.R. 33(A)(2), a new trial may be granted where "[m]isconduct of the jury" materially affects a defendant's substantial rights. "'By its terms, Crim.R. 33 does not require a hearing on a motion for a new trial, and this Court has consistently held that the decision to conduct a hearing is one that is entrusted to the discretion of the trial court.'" *State v. Richardson*, 9th Dist. Lorain No. 16CA011003, 2017-Ohio-8138, ¶ 6, quoting *State v. Jalowiec*, 9th Dist. Lorain No. 14CA010548, 2015-Ohio-5042, ¶ 20. This Court also reviews a trial court's decision to deny a motion for new trial for an abuse of discretion. *Id*. Upon review for an abuse of discretion, this court considers whether the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d 217, 219.

{¶48} The jury returned its verdict in this matter on Tuesday, September 19, 2017. On Thursday, September 21, 2017, the parties reconvened for the trial court to hear and determine the sexually violent predator specification. Just prior to the commencement of the specification hearing, Pyle's trial counsel made an oral motion for a new trial. As grounds for his motion, Pyle alleged that during voir dire he observed a venireperson—eventually seated as a juror— "tak[e] his cell phone out of his pocket and text[] throughout [] sidebars."

{¶49} On the record, the court inquired briefly regarding the nature of the allegation and then asked counsel "[a]t what point in time did your client tell you about this?" Counsel responded, "I believe he told me about this yesterday." Counsel later indicated that Pyle informed him about the alleged juror misconduct on "Monday evening." Counsel again stated that he was moving for a new trial and sought to voir dire that juror based on the alleged misconduct. The trial court overruled the motion.

{¶50} The trial court's consideration of a motion for a new trial based on juror misconduct involves two steps: (1) "a determination of whether misconduct actually occurred,"

and (2) "whether that misconduct materially prejudiced the defendant's substantial rights." *Jalowiec*, 2015-Ohio-5042 at ¶ 48. According to Crim.R. 33(C), however, "[t]he causes enumerated in subsection (A)(2) * * * must be sustained by affidavit showing their truth[.]" "Crim.R. 33(C) requires affidavits which support the motion alleging grounds under [Crim.R. 33(A)(2) and] * * * [i]f the defendant fails to produce supporting affidavits, the trial court, in its discretion, may deny the motion summarily without a hearing." *State v. Rogers*, 68 Ohio App.3d 4, 7 (9th Dist.1990), citing *Toledo v. Stuart*, 11 Ohio App.3d 292, 293 (6th Dist.1983). Here, Pyle failed to submit an affidavit in support of his motion for a new trial and, thus, failed to comply with Crim.R. 33(C). On these facts, we cannot say that the trial court abused its discretion in denying the motion for a new trial without further inquiry.

{¶51} Accordingly, Pyle's sixth assignment of error is overruled.

### Assignment of Error V

**Pyle was afforded ineffective assistance of counsel[.]**

{¶52} In his fifth assignment of error, Pyle argues that he was denied effective assistance of counsel. Pyle cites to several instances throughout trial, alleging ineffective representation by trial counsel. We disagree.

{¶53} To establish ineffective assistance of counsel, Pyle must satisfy a two-prong test demonstrating (1) that counsel's performance was deficient, in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that his defense was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a defendant must show that the representation fell below an objective standard of reasonableness. *Id.* at 687-688. To show prejudice, a "defendant must prove that there exists a reasonable probability that,

were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. However, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland* at 689. Further, this Court "need not address both prongs of the *Strickland* test should it find that [Pyle] failed to prove either." *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶54} First, Pyle argues that trial counsel did not object to the competency hearing or request to conduct additional voir dire of the child witness prior to her testimony. As discussed above, when C.P.'s ability to testify arose as an issue at trial, the judge discussed the issue with counsel outside of the presence of the jurors. Initially, trial counsel on behalf of Pyle expressed serious concerns as to C.P.'s competency and objected to her testimony until "some further investigation was conducted." At that point, the judge clarified that the issue of C.P.'s competency was not based on her age and, because C.P. was over the age of ten, there was no thought to have a "601 hearing." The trial judge proposed how the court would handle the matter, and trial counsel did not further object.

{¶55} As we concluded regarding Pyle's second and seventh assignments of error, Evid. R. 601(A) was inapplicable to C.P. based on her age, and the trial court did not err in conducting a voir dire of C.P. in the presence of the jury. Pyle's arguments that trial counsel was ineffective for failing to object are likewise based on the mistaken belief that the trial court was required to conduct a competency hearing pursuant to Evid. R. 601(A). We conclude, therefore, that Pyle has not established that trial counsel's performance was deficient in this respect.

{¶56} Next, Pyle challenges trial counsel's stipulation to the admissibility of his 1995 conviction for purposes of the specification hearing. Further, he argues that trial counsel did not

object to the trial court's "interpretation" of R.C. 2971.02(H)(2) at the hearing. Even assuming that trial counsel's performance was deficient in those respects, Pyle has failed to demonstrate that he was prejudiced. We conclude that Pyle has not shown a reasonable probability that, if not for trial counsel's alleged errors, the result of the specification hearing would have been different.

{¶57} Pyle also asserts that "[t]rial counsel did not raise a single objection during the entire trial" and that "[t]rial counsel did not request a jury instruction on attempted anal rape." However, Pyle has not developed his argument with respect to these two contentions in any meaningful way. Therefore, we conclude that Pyle has not demonstrated that trial counsel was deficient.

{¶58} Accordingly, Pyle's fifth assignment of error is overruled.

### Assignment of Error VIII

**The cumulative effect of the trial court's errors denied Pyle a fair trial[.]**

{¶59} In his eighth assignment of error, Pyle contends that even if this Court concludes that the trial court committed harmless errors in the above assignments of error, the cumulative error doctrine should apply to warrant a reversal of his conviction. However, as indicated by our resolution of the previous assignments of error, Pyle has not identified a single instance of error. Accordingly, the cumulative error doctrine does not apply and does not support the reversal of Pyle's convictions. *See State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132 ("[T]he doctrine of cumulative error is not applicable to the present case, because there were no multiple errors.")

{¶60} Therefore, we overrule Pyle's eighth assignment of error.

III.

**{¶61}** Pyle's eight assignments of error are overruled.  The judgment of conviction in the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

AVIVA L. WILCHER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.